1

2

3

4

5

6

7

8            IN THE UNITED STATES DISTRICT COURT

9           FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   DERRICK EZRE HOLLOWAY,              )    No. C 06-05545 JW (PR)
                                         )
12              Petitioner,              )    ORDER DENYING PETITION FOR
                                         )    WRIT OF HABEAS CORPUS;
13       vs.                             )    DENYING CERTIFICATE OF
                                         )    APPEALABILITY
14                                       )
     D.K. SISTO, Warden,                 )
15                                       )
                Respondent.              )
16                                       )
                                         )
17   _____)

18          Petitioner, a state prisoner currently incarcerated at San Quentin State Prison in San

19   Quentin, California, has filed a pro se petition for a writ of habeas corpus pursuant to 28

20   U.S.C. § 2254, challenging his state convictions.  The Court reviewed the amended petition

21   and ordered respondent to show cause why a writ of habeas corpus should not be granted

22   based on petitioner's cognizable claims.  Respondent filed an answer with a supporting

23   memorandum and exhibits.  Petitioner filed a traverse.

24

25                              **BACKGROUND**

26          According to the petition, a jury convicted petitioner of first degree murder and

27   second degree attempted murder with various enhancements in Alameda County Superior

28   Court.  The trial court sentenced him to thirty-seven years to life in state prison.  On direct

**United States District Court**
For the Northern District of California

appeal, the California Court of Appeal affirmed, and the California Supreme Court denied a petition for review.  Thereafter, petitioner filed unsuccessful habeas petitions in the state courts.

The California Court of Appeal set forth the following summary of facts[1]:

> On May 25, 1995, about 6:00 p.m., three men entered an apartment in Oakland shared by two elderly men, Harvey McClendon and Bryant Thompson. FN1.  Thompson sold barbituates from the apartment, and kept a revolver and a few hundred dollars in cash under a pillow on the couch. McClendon let the first of the men into the apartment in answer to his knock at the door, and while doing so, took the opportunity to look at his face closely.  FN2.  McClendon had never seen any of the three men before.

> FN1. All further unspecified references to dates are to the year 1995.

> FN2.  At [petitioner's] trial, the prosecution established to the jury's satisfaction that this first man was petitioner.  We will therefore refer to him as such, notwithstanding his challenge to the sufficiency of the evidence.

> After the three men entered the apartment, [petitioner] stood over Thompson with a revolver in his hand, while the other two grabbed McClendon.  McClendon managed to free himself, and went to his bedroom to get a shotgun; while doing so, he heard shots being fired (at Thompson, as later appeared).  When McClendon returned with the shotgun, the two men who had grabbed him ran away, and [petitioner] and McClendon exchanged shots. [Petitioner] was hit in the head with a blast from McClendon's shotgun, and fled the apartment bleeding. McClendon followed him outside and saw him stumble and fall, and then get up and run away.

> Thompson died of his gunshot wounds.  McClendon was taken to the hospital in Oakland for outpatient treatment, and survived to testify at [petitioner's] trial.  Later that night, McClendon was unable to identify [petitioner] in a photographic lineup, but he was weak from blood loss and under medication at the time.

> About 8:45 p.m. that same evening, [petitioner] was treated at a different hospital in Richmond for bleeding wounds to his face, and metallic fragments in his head, that were consistent with his having been hit by a shotgun blast.  He also had wounds on his left arm and right foot consistent with a handgun fired at close range.  FN3.

> FN3. The prosecution argued at trial that these wounds resulted from [petitioner's] shooting himself accidentally during his exchange of fire with McClendon.

---

[1] People v. Holloway, No. A100614, California Court of Appeal, First Appellate District (May 26, 2004).  (Resp't Ex. 1.)

United States District Court

For the Northern District of California

Having been informed that McClendon had injured his assailant with a shotgun blast to the head, the Oakland police had alerted area hospitals to look out for a patient with such injuries. As a result, the police later obtained and reviewed the medical records of [petitioner's] treatment for his gunshot wounds, and [petitioner] became a suspect in the killing of Thompson and the assault on McClendon, though he was not arrested until October 16.

Following normal procedure, the Richmond hospital where [petitioner] was treated had notified the Richmond police about [petitioner's] gunshot wounds. On June 1, a Richmond police detective, David Kannisto, telephoned [petitioner] and tape-recorded the ensuing conversation, in which [petitioner] gave an explanation of how he had come to be shot. FN4. Kannisto was unaware at the time of the telephone interview that [petitioner] was a suspect in the Thompson/McClendon case in Oakland. [Petitioner] told Kannisto that he had gone to the Easter Hill area of Richmond to meet a girl he had recently met at a party, and whose pager number he had since lost, and that while he was trying to page the girl from a phone booth, he was shot by an unknown assailant. Kannisto was unable to find any evidence corroborating [petitioner's] contention that he had been shot in the Easter Hill area.

> FN4. Kannisto's testimony regarding his phone call with [petitioner] and his investigation of the incident was videotaped prior to trial, and the videotape was later played to the jury. During the videotaped testimony, the audiotape of the telephone conversation was played, and Kannisto authenticated it. [Petitioner's] contentions on appeal regarding the use of Kannisto's videotaped testimony, and of [petitioner's] statement during the telephone call, are discussed post.

Blood-typing tests were performed in 1995 and 1996-1997 on blood samples taken from the apartment and from the area outside where [petitioner] had fallen while fleeing the scene after McClendon shot him. Blood from the hallway wall and from where [petitioner] fell was consistent with [petitioner] as a possible source, and could not have come from Thompson or McClendon. In 2000, an additional, more sophisticated PCR and STR DNA analysis was performed, which showed that seven blood samples from the crime scene all shared nine genetic markers with [petitioner's]. The prosecution's expert testified that this particular array of genetic markers occurs in significantly less than 1 out of 100,000 people in the general population, and only in 1 out of 3.9 trillion in the African American population. FN5.

> FN5. [Petitioner] is African-American. McClendon testified that the shooter was also African-American.

On October 17, 1995, shortly after [petitioner's] arrest, McClendon viewed a live line-up that included [petitioner]. McClendon tentatively marked [petitioner's] position, saying he appeared similar to the shooter in general appearance, complexion, and height, but seemed heavier. At the preliminary hearing on February 26, 1999, well over three years later, McClendon was not able to identify [petitioner] as the

1   shooter.

2                                  **DISCUSSION**

3   A.    Standard of Review

4         This court may entertain a petition for a writ of habeas corpus "in behalf of a person in

5   custody pursuant to the judgment of a State court only on the ground that he is in custody in

6   violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

7         The writ may not be granted with respect to any claim that was adjudicated on the

8   merits in state court unless the state court's adjudication of the claim: "(1) resulted in a

9   decision that was contrary to, or involved an unreasonable application of, clearly established

10  Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a

11  decision that was based on an unreasonable determination of the facts in light of the evidence

12  presented in the State court proceeding."  Id. § 2254(d).

13        "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state

14  court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of

15  law or if the state court decides a case differently than [the] Court has on a set of materially

16  indistinguishable facts."  Williams v. Taylor, 529 U.S. 362, 412-13 (2000).  "Under the

17  'reasonable application clause,' a federal habeas court may grant the writ if the state court

18  identifies the correct governing legal principle from [the] Court's decisions but unreasonably

19  applies that principle to the facts of the prisoner's case."  Id. at 413.  "[A] federal habeas

20  court may not issue the writ simply because the court concludes in its independent judgment

21  that the relevant state-court decision applied clearly established federal law erroneously or

22  incorrectly.  Rather, that application must also be unreasonable."  Id. at 411.  A federal

23  habeas court making the "unreasonable application" inquiry should ask whether the state

24  court's application of clearly established federal law was "objectively unreasonable."  Id. at

25  409.

26        The only definitive source of clearly established federal law under 28 U.S.C. §

27  2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the

28

**United States District Court**
For the Northern District of California

1    state court decision.  <u>Williams</u>, 529 U.S. at 412; <u>Clark v. Murphy</u>, 331 F.3d 1062, 1069 (9th

2    Cir. 2003).  While circuit law may be "persuasive authority" for purposes of determining

3    whether a state court decision is an unreasonable application of Supreme Court precedent,

4    only the Supreme Court's holdings are binding on the state courts and only those holdings

5    need be "reasonably" applied.  <u>Id.</u>

6         Even if the state court decision was either contrary to or an unreasonable application

7    of clearly established federal law, within the meaning of AEDPA, habeas relief is still only

8    warranted if the constitutional error at issue had a "'substantial and injurious effect or

9    influence in determining the jury's verdict.'"  <u>Penry v. Johnson</u>, 532 U.S. 782, 796 (2001)

10   (quoting <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 638 (1993)).

11        Lastly, a federal habeas court may grant the writ it if concludes that the state court's

12   adjudication of the claim "resulted in a decision that was based on an unreasonable

13   determination of the facts in light of the evidence presented in the State court proceeding." 28

14   U.S.C. § 2254(d)(2).  The court must presume correct any determination of a factual issue

15   made by a state court unless the petitioner rebuts the presumption of correctness by clear and

16   convincing evidence.  <u>Id.</u> §2254(e)(1).

17   B.   <u>Legal Claims and Analysis</u>

18        Petitioner raises nine claims for federal habeas relief: (1) there was insufficient

19   evidence to support his convictions; (2) the "trial court's refusal to grant a <u>Kelly-Frye</u> hearing

20   on the issue of population substructering [sic]" denied petitioner his right to due process; (3)

21   the admission at trial of statements taken in violation of <u>Miranda</u> violated petitioner's right to

22   due process; (4) the trial court violated petitioner's due process by giving jury instruction

23   CALJIC No. 2.03; (5) the trial court violated petitioner's right to confrontation by depriving

24   him of his right to cross-examine Detective Kannisto; (6) petitioner received ineffective

25   assistance of counsel when counsel: (a) failed to investigate petitioner's alibi defense, (b)

26   failed to investigate and present forensic DNA evidence, and (c) failed to object to the

27   admission at trial of a tape recorded statement by petitioner; and (7) petitioner received

28   ineffective assistance of appellate counsel when appellate counsel failed to pursue viable

1    claims on appeal.

2        1.    Insufficient evidence

3        Petitioner claims that his convictions are not supported by sufficient evidence.

4    Specifically, petitioner asserts that the victim was unable to positively identify him as the

5    shooter on three separate occasions and at times, even rejected petitioner's image as a

6    possibility.  (Am. Pet. at 10.)  Respondent asserts that this claim is procedurally defaulted

7    and  alternatively, is meritless.

8        A federal court will not review questions of federal law decided by a state court if the

9    decision also rests on a state law ground that is independent of the federal question and

10   adequate to support the judgment.  Coleman v. Thompson, 501 U.S. 722, 729-30 (1991).  If

11   the state court does not rely on a potential procedural bar but instead considers the federal

12   claim on the merits, there is of course no procedural default, and the federal court may

13   consider the claim.  See Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991).  "[I]f the decision of

14   the last state court to which the petitioner presented his federal claims fairly appears to rest

15   primarily on resolution of those claims, or to be interwoven with those claims, and did not

16   clearly and expressly rely on an independent and adequate state ground, a federal court may

17   address the petition."  Coleman, 501 U.S. at 735.

18       In Ylst, the Court held that where the last reasoned opinion on a claim expressly

19   imposes a procedural bar, it should be presumed that a later decision summarily rejecting the

20   claim did not silently disregard the bar and consider the merits.  See Ylst, 501 U.S. at 801-06.

21   Similarly, where the last reasoned opinion on the claim fairly appears to rest primarily upon

22   federal law, it should be presumed that no procedural default has been invoked by a later

23   unexplained order.  See id. at 803.

24       On May 26, 2004, the California Court of Appeal concluded that this claim had been

25   waived by petitioner:

26           [Petitioner's] first contention on appeal is that the evidence supporting his
             conviction is insufficient "as a matter of law," because McClendon failed to
27           identify him as the gunman, and that his conviction should therefore be
             "quashed."  Counting only the trial testimony portion, the reporter's transcript in
28           this case comprises in excess of 1,000 pages, and includes the testimony of 19

witnesses. In contrast, the statement of facts in [petitioner's] opening brief consists of one paragraph, occupying approximately half a page, and contains a total of five citations to the record. FN6. This is supplemented, in the body of [petitioner's] argument on this point, by a description, with record references, of the evidence relating to McClendon's inability to identify him positively. Even this portion of [petitioner's] brief, however, contains no statement, or even acknowledgement, of the considerable body of other evidence that did implicate him.

> FN6. In its entirety, including record references, the statement of facts reads as follows: "On or about May 26, 1995, Derrick Holloway arrived at the John Muir Hospital to be treated for facial shots. (RT 11) He was treated by Dr. Garry. (RT 11) On or about May 26, 1995, unarmed [ sic ] gunmen entered the home of the two victims. One victim was killed and the other victim was wounded. (RT 15) The surviving victim shot the gunman with a double-barrel shotgun. (RT 119) Blood recovered from the scene of the crime match [ sic ] appellant's, pursuant to DNA testing. (RT 1046)"

The rules governing the briefing requirements for challenges to the sufficiency of the evidence are well established, and apply in criminal as well as civil cases. See People v. Dougherty (1982) 138 Cal. App. 3d 278, 188. A reviewing court starts with the presumption that the record contains evidence to sustain every finding of fact. In order to make out a case on appeal for insufficiency of the evidence, the appellant's opening brief must affirmatively demonstrate that there is no substantial evidence to support the challenged findings. A recitation of only the evidence supporting the [petitioner's] version of the facts does not constitute such a demonstration. Rather, the [petitioner] is required to set forth in his brief all of the material evidence on the point, and not merely his own evidence. It is incumbent upon the [petitioner] to state fully, with transcript references, the evidence which is claimed to be insufficient to support the findings. Unless this is done, the sufficiency of the evidence claim is deemed to be waived. In re Marriage of Fink (1979) 25 Cal. 3d 877, 887-888; Foreman & Clark Corp. v. Fallon (1971) 3 Cal. 3d 875, 881. In the present case, "[petitioner's] counsel has gone so far as to virtually omit even a one-sided factual summary. In a case with a [1,000]-page record . . . this is inexcusable and unconscionable. [footnote omitted.] [Petitioner's] evidentiary insufficiency contention has been waived." People v. Dougherty, supra, 138 Cal. App. 3d at p. 282.

(Resp. Ex. 1 at 4-6.)

The state appellate court's reasoning was independent of federal law and expressly imposed a state rule that challenges to sufficiency of the evidence claims be briefed in a certain and thorough manner lest they be waived. (Id.) Cf. Ylst, 501 U.S. at 801-06 (when the last reasoned opinion on a claim expressly imposes a procedural bar, it should be presumed that a later decision summarily rejecting the claim did not silently disregard the bar and consider the merits).

Because respondent adequately pled the existence of an affirmative defense as to this

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1  claim, the burden shifts to petitioner to demonstrate that the procedural rule was not

2  independent or adequate.  See Bennett v. Mueller, 322 F.3d 573, 585-86 (9th Cir. 2003).

3  However, not only does petitioner fail to contest the independence and adequacy of these

4  rules, or attempt to demonstrate cause and prejudice, he also concedes that this claim is

5  procedurally barred.[2]  Accordingly, the Court concludes that this claim is procedurally

6  defaulted and dismisses it with prejudice.

7      Alternatively, petitioner's claim is without merit.  On habeas review, a federal court

8  evaluating the evidence under In re Winship and Jackson v. Virginia should take into

9  consideration all of the evidence presented at trial.  LaMere v. Slaughter, 458 F.3d 878, 882

10  (9th Cir. 2006).  If confronted by a record that supports conflicting inferences, a federal

11  habeas court "must presume – even if it does not affirmatively appear on the record – that the

12  trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that

13  resolution."  Jackson, 443 U.S. at 326.  A jury's credibility determinations are therefore

14  entitled to near-total deference.  Bruce v. Terhune, 376 F.3d 950, 957 (9th Cir. 2004).

15  Circumstantial evidence and inferences drawn from that evidence may be sufficient to sustain

16  a conviction.  Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995).

17      Here, even though the victim failed to positively identify petitioner as the shooter, the

18  record demonstrates that the shooter was wounded in the face by a shotgun blast on the night

19  of May 25, 1995, just as petitioner was; petitioner's genetic profile matched seven blood

20  samples taken from the crime scene; and petitioner's explanation to the Richmond police

21  about being shot at while in a phone booth was unsupported by any corroborating evidence.

22  Although it could be inferred that petitioner was not the shooter based on McClendon's

23  failure to positively identify him, they jury clearly rejected that inference in favor of the

24  prosecution's theory.  See Jackson, 443 U.S. at 326.

25      Accordingly, petitioner is not entitled to habeas relief on this claim.

26  ///

27

28

---

[2]  "1.  Petitioner concedes Respondents [sic] assertions 1 thru 3."  (Traverse at 2.)

2.  <u>Kelly-Frye hearing</u>

Petitioner claims that the trial court refused to grant a <u>Kelly-Frye</u>[3] hearing on the issue of "population substructuring" and this denial violated his right to due process.  Petitioner explains that he was convicted "primarily based upon the prosecution's statistics."  He asserts that "the defense should have been given an opportunity to impeach those statistics by introducing evidence that population substructuring would significantly very [sic] the statistics."  (Am. Pet. at 14-15.)  Respondent again argues that this claim is procedurally defaulted and alternatively, is meritless.

On direct appeal, the California Court of Appeal summarized petitioner's argument and stated that petitioner discussed "highly technical and abstract . . . aspects of DNA evidence, including the issue of population substructuring" without any citations to case law or the underlying record.  (Resp. Ex. 1 at 6-7.)  From the respondent's brief in the state appellate court as well as the transcripts, the California Court of Appeal gleaned that petitioner moved for a pretrial hearing wherein petitioner's counsel requested a "prong 1" hearing based on <u>Kelly</u>.  (<u>Id.</u> at 7.)  However, the state appellate court found no evidence that the petitioner even requested an opportunity to discuss any "population substructuring" issue before the trial court.  The California Court of Appeal concluded, therefore, that this claim had been waived by petitioner:

> Nowhere in anything that was included in the record on appeal is there any reference to the term "population substructuring."  Nor does [petitioner's] brief explain how, if at all, the issue of population substructuring is related to the only issue that the record shows was raised by [petitioner's] trial counsel, i.e., whether the second and third DNA tests done on the crime scene blood required a prong one hearing to determine their admissibility because they involved a new and different methodology from the established RFLP test.

> An appellate court will ordinarily not consider assertions as to procedural errors that were not brought to the attention of the trial court.  <u>People v. Saunders</u> (1993) 5 Cal. 4th 580, 589-590.  Moreover, even in a criminal case, the "defendant has the burden of providing a record adequate to support his arguments on appeal" [footnote omitted.]  <u>People v. Malabag</u> (1997) 51 Cal. App. 4th 1419, 1427, and we may reject as not properly raised issues that are "perfunctorily asserted without any analysis or argument in support ."  <u>People v.</u>

---

[3]  <u>People v. Kelly</u>, 17 Cal. 3d 24 (1976) and <u>Frye v. United States</u>, 293 F. 1013 (D.C. Cir. 1923).

United States District Court

For the Northern District of California

Barnett (1998) 17 Cal. 4th 1044, 1107 n.37.  In this case, [petitioner] neither has provided us with an adequate record to demonstrate, nor has he seriously tried to argue, that the "population substructuring" issue was preserved in the trial court. The issue has therefore been waived, and we will not address it on the merits.

(Resp. Ex. 1 at 8.)

The state appellate court's reasoning was independent of federal law and expressly imposed a state rule that issues not preserved in trial court are waived.  Cf. Ylst, 501 U.S. at 801-06.  Further, petitioner does not refute the California Court of Appeal's finding that he did not preserve this issue in trial court.  See Davis v. Woodford, 384 F.3d 628, 653-54 (9th Cir. 2004) (finding Confrontation Clause claim procedurally barred where state supreme court found constitutional claim waived because petitioner failed to raise it below).

Because respondent adequately pled the existence of an affirmative defense as to this claim, the burden shifts to petitioner to demonstrate that the procedural rule was not independent or adequate.  See Bennett, 322 F.3d at 585-86.  Again, petitioner fails to contest the independence and adequacy of this rule, and does not demonstrate cause and prejudice. In addition, he concedes that this claim is procedurally barred.[4]  Accordingly, the Court concludes that this claim is procedurally defaulted and dismisses it with prejudice.

3.     Admission of statements in violation of Miranda[5]

Petitioner claims that the admission of his pretrial statements to Detective Kannisto was taken in violation of Miranda and therefore, its admission violated due process when the prosecution introduced the statements in its case-in-chief.  (Am. Pet. at 16-19.)  Respondent again argues that this claim is procedurally defaulted and alternatively, is meritless.

On direct appeal, the California Court of Appeal concluded that this claim had been waived by petitioner:

[Petitioner] contends that when Richmond Police Detective Kannisto questioned him over the telephone regarding how he had incurred his gunshot wounds, that questioning "was custodial and therefore unconstitutional absent a Miranda [footnote omitted] warning." [Petitioner's] brief discussing aspects of the case law under Miranda is largely irrelevant to the present case, [footnote

----

[4]  See n.2, supra.

[5]  Miranda v. Arizona, 384 U.S. 436 (1966)

United States District Court

For the Northern District of California

omitted] inasmuch as Kannisto's uncontroverted testimony indicated that at the time, he regarded [petitioner] as a crime victim, not a suspect.

In any event, the issue was waived by the failure of [petitioner's] trial counsel to object on this ground in the trial court.  As respondent's brief points out, although [petitioner's] trial counsel objected on other grounds to the admission of his statements to Kannisto, she expressly disclaimed any reliance on <u>Miranda</u> in so doing.  FN12. [Petitioner] is therefore precluded from raising this issue on appeal.  <u>See, e.g.</u>, <u>People v. Clark</u> (1993) 5 Cal. 4th 950, 988 n.13.

FN12.  Given the circumstances of Kannisto's questioning of [petitioner], we do not fault [petitioner's] trial counsel for conceding the issue.

(Resp. Ex. 1 at 9.)

The Ninth Circuit has recognized and applied the California contemporaneous objection rule in affirming denial of a federal petition on grounds of procedural default where, as here, there was a complete failure to object at trial.  <u>See Inthavong v. Lamarque</u>, 420 F.3d 1055, 1058 (9th Cir. 2005). Further, petitioner does not refute the California Court of Appeal's finding that he did not object to the admission of these statements in trial court. <u>See Davis</u>, 384 F.3d at 653-54.

Because respondent adequately pled the existence of an affirmative defense as to this claim, the burden shifts to petitioner to demonstrate that the procedural rule was not independent or adequate.  <u>See Bennett</u>, 322 F.3d at 585-86.  However, not only does petitioner fail to contest the independence and adequacy of this rule nor attempt to demonstrate cause and prejudice, he also concedes that this claim is procedurally barred.[6] Accordingly, the Court concludes that this claim is procedurally defaulted and dismisses it with prejudice.

4.    <u>CALJIC. No. 2.03</u>

Petitioner claims that based on his interpretation of California case law, the trial court should not have instructed the jury with CALJIC No. 2.03[7] unless petitioner introduced his

---

[6] <u>See</u> n.2, <u>supra</u>.

[7] CALJIC No. 2.03 provides, "If you find that before this trial the defendant made a willfully false or deliberately misleading statement concerning the crimes for which he is now being tried, you may consider such statement as a circumstance tending to prove a consciousness of guilt. However, such conduct is not sufficient by itself to prove guilt and its weight and significance, if any, are matters for your determination."

1    pre-trial statements, i.e., his "unMirandized" statements, to Detective Kannisto at trial.  In

2    other words, petitioner believed that CALJIC No. 2.03 could not be given when the

3    prosecution introduces a defendant's allegedly false pretrial statements rather than defendant

4    himself.  (Am. Pet. at 22-23.)

5          The California Court of Appeal rejected this claim as follows:

6              [Petitioner] alternatively argues that the court should not have given
       CALJIC No. 2.03 [footnote omitted] because his pretrial statement was obtained
7       from him in violation of Miranda, and "[i]n the instant matter, [petitioner] did not
       introduce his statements to the police and thus CALJIC 2.03 should not have
8       been given."

9              As best as we can make it out, [petitioner's] argument appears to be that
       because the court in Williams [citation and footnote omitted] approved the use of
10      CALJIC No. 2.03 in a case where the defendant had introduced his own
       "unMirandized" pretrial statement into evidence, CALJIC No. 2.03 is not
11      appropriate in a case where, as here, the [petitioner's] "unMirandized" pretrial
       statement was introduced by the prosecution.

12             The California Supreme Court has repeatedly rejected challenges to
       CALJIC No. 2.03 in cases in which the [petitioner's] pretrial statement was
13      introduced by the prosecution. [Citations omitted.] [Petitioner's] brief does not
       even attempt to suggest any reason that these holdings should not control here,
14      particularly where no Miranda violation was involved.  His argument on this
       point, therefore, is meritless.
15

16   (Resp. Ex. 1 at 9-10.)

17         A habeas petitioner is not entitled to relief unless the instructional error "'had

18   substantial and injurious effect or influence in determining the jury's verdict.'"  Brecht v.

19   Abrahamson, 507 U.S. 619, 637 (1993) (quoting Kotteakos v. United States, 328 U.S. 750,

20   776 (1946)).  In other words, state prisoners seeking federal habeas relief may obtain plenary

21   review of constitutional claims of trial error, but are not entitled to habeas relief unless the

22   error resulted in "actual prejudice."  Id. (citation omitted).  However, a challenge to a jury

23   instruction solely as an error under state law does not state a claim cognizable in federal

24   habeas corpus proceedings.  See Estelle v. McGuire, 502 U.S. 62, 71-72 (1991); see, e.g.,

25   Little v. Crawford, 449 F.3d 1075, 1082 (9th Cir. 2006) (claim that state supreme court

26   misapplied state law or departed from its earlier decisions does not provide a ground for

27   habeas relief).

28         Here, petitioner does not discuss how the jury instruction violated his federal

constitutional rights, except to summarily assert that it offended his right to due process. However, absent any further discussion, a petitioner may not "transform a state-law issue into a federal one merely by asserting a violation of due process." Longford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1996). Federal habeas relief does not lie for state errors. See Estelle, 502 U.S. at 71-72. Moreover, as the California Court of Appeal concluded, petitioner was not "in custody" at the time he was questioned by Detective Kannisto. Thus the Miranda case and its progeny are irrelevant to this claim.

Accordingly, the state court's rejection of this claim was not contrary to, or an unreasonable application of, clearly established federal law, nor was it an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1), (2). Petitioner is not entitled to habeas relief on this claim.

### 5.   Denial of right to cross-examine Detective Kannisto

Petitioner next claims that was denied his right to cross-examine Detective Kannisto, which violated his Confrontation Clause rights. Specifically, petitioner appears to argue that although the trial court admitted into evidence Kannisto's videotaped testimony as opposed to requiring him to appear live at trial, petitioner was unable to confront Kannisto. (Am. Pet. at 23-28.) Again, respondent asserts that petitioner's claim is procedurally barred.

The California Court of Appeal rejected petitioner's claim as follows:

> [Petitioner's] last argument is that the trial court erred in permitting the use at trial of Detective Kannisto's videotaped testimony concerning his interview of [petitioner] and his unsuccessful efforts to verify [petitioner's] version of how he came to be shot in the face. As respondent's brief points out, the trial court decided to permit the use of Kannisto's videotaped testimony only after a pretrial hearing at which the prosecution established good cause for Kannisto's absence from the state of California at the time of trial, and thus for a conditional examination under Penal Code section 1336, subdivision (a). Based on this showing, the court held a conditional hearing at which Kannisto's testimony was videotaped. [Petitioner's] trial counsel took advantage of several opportunities to cross-examine Kannisto as part of the videotaped testimony.

> At trial, [petitioner's] counsel not only failed to object to the introduction of the videotape, but affirmatively stated that she had no objection to its use, requesting only that the videotape be played in its entirety prior to the introduction of the audiotape of Kannisto's telephone interview with [petitioner]. Accordingly, [petitioner] has waived the right to contend on appeal that the admission of the videotape violated his rights under the Sixth Amendment's confrontation clause. FN15. People v. Millwee (1998) 18 Cal. 4th 96, 128-129.

FN15.  Even if this issue had not been waived, it has no merit. Given the showing made at the hearing regarding the reasons for Kannisto's unavailability to testify at trial, we see no Sixth Amendment error in admitting his testimony via a videotape that included extensive cross-examination by [petitioner's] trial counsel.  Cf. Crawford v. Washington (March 8, 2004) 541 U.S. 36, ---- [admission of prior testimonial statement by witness in criminal case violates Sixth Amendment confrontation clause unless witness is unavailable and defendant had prior opportunity to cross-examine witness].

(Resp. Ex. 1 at 10-11.)

As stated above, the Ninth Circuit has recognized and applied the California contemporaneous objection rule in affirming denial of a federal petition on grounds of procedural default where, as here, there was a complete failure to object at trial.  See Inthavong, 420 F.3d at 1058.  Further, petitioner does not refute the California Court of Appeal's finding that he did not object to the admission of these statements in trial court.  See Davis, 384 F.3d at 653-54.

Because respondent adequately pled the existence of an affirmative defense as to this claim, the burden shifts to petitioner to demonstrate that the procedural rule was not independent or adequate.  See Bennett, 322 F.3d at 585-86.  However, petitioner fails to contest the independence nor adequacy of this rule nor does he attempt to demonstrate cause and prejudice.  Accordingly, the Court concludes that this claim is procedurally defaulted and dismisses it with prejudice.

Alternatively, even if petitioner had made a timely objection, his claim is not supported by the record.  Out-of-court statements by witnesses that are testimonial hearsay are barred under the Confrontation Clause unless (1) the witnesses are unavailable, and (2) the defendants had a prior opportunity to cross-examine the witnesses.  Crawford v. Washington, 541 U.S. 36, 59 (2004).  Here, the trial court determined that Detective Kannisto was unavailable and petitioner does not dispute that the trial court's finding was erroneous.  Further, petitioner not only had a prior opportunity to cross-examine Kannisto, but did in fact cross-examine him several times as was recorded by the videotape.  (CT 402-417, 418-423, 425-427.)

Accordingly, the state court's rejection of this claim was not contrary to, or an

United States District Court

For the Northern District of California

United States District Court
For the Northern District of California

1  unreasonable application of, clearly established federal law, nor was it an unreasonable

2  determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1), (2).

3  Petitioner is not entitled to habeas relief on this claim.

4         6.       Ineffective Assistance of Counsel

5         Petitioner raises the following ineffective assistance of counsel claims: (1) failure to

6  investigate an alibi defense; (2) failure to investigate forensic DNA evidence and its

7  weaknesses; and the (3) failure to object to the introduction of "unMirandized" tape

8  recording.

9         Effective assistance of trial counsel is a right guaranteed by the Sixth Amendment.

10  Strickland v. Washington, 466 U.S. 688, 686 (1984).  Claims that assistance of counsel was

11  ineffective are evaluated in terms of whether counsel's conduct so undermined the proper

12  functioning of the adversarial process that the trial cannot be relied upon as having produced

13  a just result.  Id.

14         In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, petitioner

15  must establish both that his counsel's performance was deficient and that he was prejudiced

16  by that deficiency.  Id. at 687-88, 694.  Deficient performance is that which falls below an

17  "objective standard of reasonableness" under prevailing professional norms.  Id. at 687-88.

18  Prejudice in this context is a "reasonable probability that, but for counsel's unprofessional

19  errors, the result of the proceeding would have been different." Id. at 694.

20              A.       Failure to investigate an alibi defense

21         Petitioner contends that his trial counsel was ineffective by failing to investigate and

22  present evidence of an alibi defense.  (Am. Pet. at 28-32.)  Specifically, petitioner asserts that

23  counsel should have investigated and "locate[d] potential witnesses to formulate a [sic] alibi

24  defense."  (Id. at 29.)

25         Strickland imposes upon counsel a duty to make a reasonable investigation.

26  Strickland, 466 U.S. at 691.  Counsel has a duty to investigate defendant's "most important

27  defense."  Bragg v. Galaza, 242 F.3d 1082, 1088 (9th Cir.), amended, 253 F.3d 1150 (9th

28  Cir. 2001) (citation and quotations omitted).  However, the duty to investigate and prepare a

United States District Court

For the Northern District of California

defense "does not necessarily require that every conceivable witness be interviewed." Id. (citation and internal quotations omitted).  "[R]easonably diligent attorneys may draw a line when they have good reason to think further investigation would be a waste." Rompilla v. Beard, 545 U.S. 374, 383 (2005) (citations omitted).  In addition, "strategic choices made after a thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." See Cacoperdo v. Demosthenes, 37 F.3d 504, 508 (9th Cir. 1994) (decision whether to introduce medical evidence largely question of professional judgment) (internal citation and quotation omitted).

Here, petitioner attached to his petition a March 5, 2002 letter from trial counsel in which counsel set forth lab work results from the prosecution's DNA testing, as well as the prosecution's plea offer.  In the letter, trial counsel also communicated that she opted against calling an expert to testify as a Richmond gang expert.  She continued, "Since you say you will not testify, there is no way to get into evidence that you were shot in Richmond.  It was my position that shooting was a gang shooting, but for the evidence to talk about gang shootings in Richmond, you would have to testify that is where you got shot."

Clearly, trial counsel considered and planned to use an alibi defense theory, however, as stated, such a theory could not be presented without petitioner's testimony.  Without any testimony or evidence supporting petitioner's alibi, counsel's decision not to pursue an alibi defense was reasonable.  Further, with respect to petitioner's argument that counsel should have interviewed alibi witnesses, he identifies no particular individual, nor does he suggest what the potential testimony of any individual might be.  See Bragg, 242 F.3d at 1087, 1089. Therefore, counsel's failure to investigate further or present an alibi defense theory did not constitute deficient performance, nor was petitioner prejudiced by her decision.

B.    Failure to investigate forensic evidence

Petitioner claims that counsel failed to gather enough evidence to effectively challenge the prosecution's DNA evidence. (Am. Pet. at 33.)  Specifically, petitioner asserts that counsel knew of the weaknesses in the DNA evidence, however, she failed to raise them or challenge them in court and failed to call a defense expert to counter the evidence. (Id. at

1   34.)

2           Along with petitioner's March 5, 2002 letter from trial counsel, petitioner also

3   attached trial counsel's March 3, 2000 letter in which she set forth the next steps in her

4   strategy during the discovery period.  Specifically, in the 2000 letter, counsel indicated that

5   she intended to hire Mark Taylor, a DNA expert, to testify as to why the DNA testing was

6   tainted and why STRs and the prosecution's testing process were unreliable.  Two years later,

7   on March 5, 2002, counsel's letter explained to petitioner all the DNA results and her

8   attempts to find any evidence of possible contamination, stating, "After a careful examination

9   of all the dna lab work, there is no evidence of contamination.  There are a couple of sites

10  which could be argued to be contaminated, but not enough to effect all of the enormous

11  amount of dna testing done in this case."  Further, counsel's 2002 letter explains in detail the

12  prosecution's 1995-1997 and 2000 DNA testing results and summarized the conclusions that

13  out of all the samples tested, the chances that someone besides petitioner was the source of at

14  least seven blood samples found at the scene of the crime is 1 in 3.9 trillion.  Counsel further

15  included citations to several California Court of Appeal cases concluding that the STR

16  testing method, the method used by the prosecution in 2000, is generally accepted and

17  deemed reliable in the scientific community.

18          In sum, counsel's 2002 letter demonstrates that she purposely decided not to call a

19  defense expert, and based on her research and strategy, that decision appears reasonable.

20  Moreover, petitioner does not support his assertion that but for this omission there was a

21  reasonable probability that the jury would not have convicted him.  Where the evidence does

22  not warrant it, as here, the failure to call an expert does not amount to ineffective assistance

23  of counsel.  Cf. Wilson v. Henry, 185 F.3d 986, 990 (9th Cir. 1999) (a decision not to pursue

24  testimony by a psychiatric expert is not unreasonable when the evidence does not raise the

25  possibility of a strong mental state defense).  Accordingly, counsel was not ineffective for

26  failing to investigate or call a defense expert regarding the forensic evidence.

27                  C.      Failure to object to unMirandized tape recording

28          Petitioner claims that counsel should have objected to the introduction of his tape

United States District Court
For the Northern District of California

1  recorded conversation with Detective Kannisto.  (Am. Pet. at 37-38.)  Petitioner's argument

2  is based on the incorrect assumption that he should have received <u>Miranda</u> warnings prior to

3  any questioning by Detective Kannisto.  <u>See</u> <u>supra</u>, Section B.4.

4        In <u>Miranda</u>, the Supreme Court held that certain warnings must be given before a

5  suspect's statement made during custodial interrogation can be admitted in evidence.

6  <u>Miranda</u> warnings must precede any custodial interrogation, which occurs whenever law

7  enforcement officers question a person after taking that person into custody or otherwise

8  significantly deprive a person of freedom of action.  <u>See</u> <u>Miranda</u>, 384 U.S. at 444.  General

9  "on-the-scene questioning" concerning the facts and circumstances surrounding a crime or

10  other general questioning of citizens during the fact-finding process do not trigger <u>Miranda</u>

11  warnings.  <u>See</u> <u>id.</u> at 477-78.

12        <u>Miranda</u> protections are triggered "'only where there has been such a restriction on a

13  person's freedom as to render him 'in custody.'"  <u>Stansbury v. California</u>, 511 U.S. 318, 322

14  (1994) (quoting <u>Oregon v. Mathiason</u>, 429 U.S. at 495).  "[I]n custody" means "'formal

15  arrest or restraint on freedom of movement' of the degree associated with a formal arrest."

16  <u>California v. Beheler</u>, 463 U.S. 1121, 1125 (1983) (quoting <u>Mathiason</u>, 429 U.S. at 495).

17  The need for a <u>Miranda</u> warning to a person in custody for an unrelated matter will only be

18  triggered by "some restriction on his freedom of action in connection with the interrogation

19  itself."  <u>Id.</u>  (finding that phone conversation initiated by jail inmate with police investigators

20  while in custody on unrelated offense was not custodial for purposes of <u>Miranda</u>).

21        Here, the circumstances surrounding the conversation with Detective Kannisto did not

22  warrant any <u>Miranda</u> warnings because petitioner was not in custody.  At the time, petitioner

23  was not a suspect in the underlying crimes.  Rather, Detective Kannisto believed petitioner to

24  be a victim in a Richmond shooting, based on petitioner's account to the treating hospital of

25  how he came to be injured.  Further, the conversation was had over the telephone and

26  petitioner has not indicated that he did not feel free to end the conversation, much less that he

27  felt there was any restriction on his freedom.  Accordingly, counsel was not ineffective for

28  failing to object to the introduction of the tape recorded conversation based on <u>Miranda</u>.

**United States District Court**
For the Northern District of California

1       7.     <u>Ineffective Assistance of Appellate Counsel</u>

2       Petitioner contends that he received ineffective assistance on appeal because his

3 appellate counsel failed to argue that his trial counsel was ineffective for failing to investigate

4 both petitioner's alibi defense and the forensic DNA evidence. (Am. Pet. at 40-43.)

5       Claims of ineffective assistance of appellate counsel are also reviewed according to

6 the <u>Strickland</u> standard. <u>Miller v. Keeney</u>, 882 F.2d 1428, 1433 (9th Cir. 1989). As

7 discussed above, petitioner's trial counsel was not ineffective. Appellate counsel reasonably

8 could have concluded as much. Therefore, petitioner has not shown any deficient

9 performance by appellate counsel or resulting prejudice. <u>See</u> <u>Featherstone v. Estelle</u>, 948

10 F.2d 1497, 1507 (9th Cir. 1991) (where trial counsel's performance did not fall below the

11 <u>Strickland</u> standard, "petitioner was not prejudiced by appellate counsel's decision not to

12 raise issues that had no merit") (footnote omitted); <u>see also</u> <u>Miller</u>, 882 F.2d at 1434 & n.11

13 (counsel must weed out weak claims).

14       Accordingly, the court concludes that the state court's denial of habeas relief was not

15 contrary to or an unreasonable application of <u>Strickland</u>.

16

17                       **CERTIFICATE OF APPEALABILITY**

18       The federal rules governing habeas cases brought by state prisoners have recently

19 been amended to require a district court that denies a habeas petition to grant or deny a

20 certificate of appealability ("COA") in its ruling. <u>See</u> Rule 11(a), Rules Governing § 2254

21 Cases, 28 U.S.C. foll. § 2254 (effective December 1, 2009). For the reasons set out in the

22 discussion above, petitioner has not shown "that jurists of reason would find it debatable

23 whether the petition states a valid claim of the denial of a constitutional right [or] that jurists

24 of reason would find it debatable whether the district court was correct in its procedural

25 ruling." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000). Accordingly, a COA is DENIED.

26

27                            **CONCLUSION**

28       For the foregoing reasons, the petition for a writ of habeas corpus and a COA are

**United States District Court** — For the Northern District of California

DENIED.

DATED: _____ March 30, 2010

_____
JAMES WARE
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA


DERRICK EZRE HOLLAWAY,

               Petitioner,

  v.

D.K. SISTO, Warden,

               Respondent.
_____/

Case Number: CV06-05545 JW

**CERTIFICATE OF SERVICE**


I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on ___3/31/2010_____, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.


Derrick Ezre Holloway T-72225
San Quentin State Prison
San Quentin, CA 94964

Dated: ___3/31/2010_____

                      Richard W. Wieking, Clerk
               /s/ By: Elizabeth Garcia, Deputy Clerk